# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, NOVEMBER TERM 1836, AT DEDHAM.

━━━━━━━━

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,  ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON,  ⎭

---

## Jabez Talbot *versus* Lemuel Gay.

The defendant, being the payee of a negotiable note, payable in four annual instalments, indorsed it to the plaintiff, stating that he would guarantee it, and the plaintiff wrote over the payee's signature the words, " I order the within note paid to T. [the plaintiff] and guaranty the payment of the same," and the defendant assigned to the plaintiff a mortgage given as security for the note. No demand was, m⸗ᵉ on the promisor to pay the note, and he remained solvent for six months after the last instalment became due, and was permitted to receive the profits of the mortgaged property for three years after that time ; and notice of the non-payment two years afterwards was given to the defendant and a demand of payment made on him. It was *held*, that the defendant was a guarantee, and not a surety, and that he was discharged from liability by the laches of the plaintiff in not using due diligence to obtain payment from the promisor and not giving the defendant seasonable notice of the non-payment.

Assumpsit against the defendant as indorser and guarantee of a promissory note, dated June 28th, 1824, for the sum of $ 800, made by Ira Guild, and payable to the defendant or his order, in annual instalments, of $ 200 each, on the first day of

April, 1826, 1827, 1828 and 1829, with interest. On the back of the note were written by the plaintiff, over the signature of the defendant, the following words : " I, the subscriber, order the within note paid to Jabez Talbot, and guaranty the payment of the same."

At the trial, before *Putnam* J., it appeared that Guild, at the time when the note was made, gave the defendant a mortgage of one third part of a factory in Sandwich, to secure the payment of the note ; that the defendant, at the time when the note was indorsed to the plaintiff, also assigned to him the mortgage ; that before he indorsed the note, he told Guild that he should guaranty the note, but that Guild must take care to pay it and not trouble him ; and that Guild, on the 7th of September, 1832, released to the plaintiff all his right, title and interest in the equity of redemption.

There was no evidence, that the plaintiff had ever demanded payment of Guild ; and it was agreed by the parties, that the plaintiff had never notified to the defendant, that the note was unpaid, nor demanded payment of him, until the 23d of December, 1834.

Guild, being called as a witness by the plaintiff, testified, that when the last instalment became due, he called upon the defendant and told him that he did not know that he should be able to pay any more on the note, and the defendant said " he was clear, though he guarantied it, because the plaintiff had not notified him ;" that the witness executed the release to the plaintiff, at the request of the defendant, who added, " do attend to this, for Mr. Talbot is continually harassing me about it ;" that the witness was the owner of one third of the factory at the time when the note was given, and he then purchased another third from the defendant ; that he continued to own two thirds until May 1829, when he sold one third for \$750 ; that he and his partners occupied the factory together until November 1829 ; that he continued to take the rents and profits of one third part thereof until the 7th of September, 1832, when he released it to the plaintiff ; that in April 1829, besides his share in the factory, he had property to the amount of about \$350, which was liable to attachment, and that he continued openly and visibly to hold the same until November 1829,

when it was taken by his creditors ; and that since that time he had remained wholly insolvent.

A verdict was taken by consent for the plaintiff, for the amount due on the note, subject to the deduction of the value of the mortgaged property at the time when it was quitclaimed by Guild to the plaintiff, in 1832 ; but if the Court should be of opinion, that the jury would not be warranted in finding for the plaintiff, by reason of any laches on his part in not seasonably collecting the note, or demanding payment thereof and giving the defendant notice of the non-payment, then the plaintiff was to become nonsuit.

*Nov 1st.*     *Mann* and *A. Prescott*, for the defendant, cited Bayley on Bills, (2d Am. ed.) 291, 292, 293 ; *Oxford Bank* v. *Haynes,* 8 Pick. 423 ; *Gibbs* v. *Cannon,* 9 Serg. & R. 202 ; *Overton* v. *Tracey,* 14 Serg. & R. 327 ; *Carver* v. *Warren,* 5 Mass. R. 545.

*Hallet* and *Cleveland,* for the plaintiff, cited *Bellows* v. *Lovell,* 5 Pick. 307 ; *Josselyn* v. *Ames,* 3 Mass. R. 274 ; *Moies* v. *Bird,* 11 Mass. R. 436 ; *Upham* v. *Prince,* 12 Mass. R. 14 ; *Allen* v. *Rightmere,* 20 Johns. R. 365 ; *Oxford Bank* v. *Haynes,* 8 Pick. 429 ; *Boyd* v. *Cleveland,* 4 Pick. 526 ; *Frye* v. *Barker,* 4 Pick. 382 ; *People* v. *Jansen,* 7 Johns. R 338 ; *Cobb* v. *Little,* 2 Greenleaf, 261.

*Nov. 4th.*     WILDE J. delivered the opinion of the Court.   Upon the facts reported, we are of opinion, that this action cannot be maintained.

The contract of the defendant is clearly one of guaranty only, and is subject to the rules which govern that species of contract. This appears from the express terms of the contract, which cannot be construed so as to charge the defendant as a surety. The parties must be presumed to have known the distinction between such contracts, and to have framed the present contract with a full knowledge of the legal duties and liabilities imposed and undertaken thereby.   The undertaking of a guarantee of a promissory note is conditional, and he will be discharged by the neglect of the holder to demand payment of the maker, and to give the guarantee notice of non-payment, provided the maker was solvent when the note fell due, and afterwards became insolvent.   *Oxford Bank* v. *Haynes,* 8 Pick. 423,

*hbbs* v. *Cannon,* 9 Serg. & R. 202 ; *Phillips* v. *Astling,* 2 Taunt. 206. The same strictness of proof as to the demand and notice is not necessary to charge a guarantee, as is required to charge an indorser ; but the demand on the maker, if he be solvent at the time the note falls due, must be made in a reasonable time ; and if the holder shall unreasonably delay so long as to cause an injury to the guarantee, he will be discharged. *Warrington* v. *Furber,* 8 East, 242 ; *Nicholson* v. *Gouthit,* 2 H. Bl. 612.

Now it appears clearly by the facts reported, that the maker of the note was solvent when it fell due, and if the plaintiff had used due diligence, it might have been secured by an attachment of his property. In addition to the mortgaged property, the maker was in the open and visible possession of other property liable to attachment, at the time the last payment on the note became due, and for a long time after. And besides, the plaintiff might have obtained payment wholly, or in part, out of the rents and profits of the mortgaged estate, if he had taken seasonable possession of it, as he ought to have done, instead of allowing the mortgager to continue for years to receive the rents and profits. It is clear, therefore, that the plaintiff is chargeable with gross laches ; as while he thus neglected to make any attempt to secure and collect the note of the maker, he made no demand of him, and gave no notice of the non-payment to the defendant. The maker has since become insolvent, so that the debt has been lost by the plaintiff's neglect, and the loss must fall upon him.

*Judgment on nonsuit.*